UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **FIDELITY & DEPOSIT COMPANY OF** | ) | |
| **MARYLAND and COLONIAL** | ) | |
| **AMERICAN CASUALTY AND** | ) | |
| **SURETY COMPANY,** | ) | |
| | ) | **Civil Action No.  SA-06-CA-207-XR** |
| **Plaintiffs,** | ) | |
| | ) | |
| **VS.** | ) | |
| | ) | |
| **TRI-LAM COMPANY, INC.,** | ) | |
| **VALDEMAR RIOS, JR., and** | ) | |
| **T.G. SERVICES** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

On this date, the Court considered Plaintiffs' motion for partial summary judgment against Defendants Tri-Lam Company, Inc. ("Tri-Lam") and T.G. Services ("T.G. Services").  For the reasons discussed below, the motion is GRANTED (Docket No. 14).

On April 9, 2007, the Court ordered Tri-Lam and T.G. Services to file a response to Plaintiffs' motion for partial summary judgment on or before April 23, 2007.  Defendants failed to file a response.  *See* Local Rule CV-7(d) ("If there is no response filed within the time period prescribed by this rule, the Court may grant the motion as unopposed").  The Court finds that Tri-Lam and T.G. Services breached the general agreement of indemnity.  The Court will enter judgment against Defendants Tri-Lam and T.G. Services, jointly and severally, for the sum of Three Million, Two  Hundred  Eighty-Three  Thousand,  Nine  Hundred  Thirty-Six  and  97/100  Dollars

($3,283,936.97).[1]  Pre- and post-judgment interest will accrue at a rate of 8.25%.  The Court will further order Defendants Tri-Lam and T.G. Services to deposit collateral with Plaintiffs in the amount of $54,826.78.

The motion for partial summary judgment only addressed Plaintiffs' breach of contract claim. Consequently, Plaintiffs' reasonable access to books and records, fraudulent transfer, breach of fiduciary duty, fraud, Texas Construction Trust Fund Statute, and conversion claims remaining pending before the Court.  After all claims against Tri-Lam and T.G. Services have been resolved, the Court will enter Final Judgment on a separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.  The Clerk is instructed to keep this case open pending resolution of these remaining claims.

The Court notes that trial in this case is currently set for June 25, 2007, and the dispositive motion deadline has passed.  The parties are ORDERED to either file (1) a motion to amend the scheduling order, or (2) an advisory with the Court indicating their intent to proceed to trial on the remaining claims on or before **May 23, 2007.**

## I. Factual & Procedural Background

On or about October 2, 2003, Defendants executed an Agreement of Indemnity in favor of Fidelity & Deposit Company of Maryland ("F&D") and Colonial American Casualty & Surety Company ("Colonial") as consideration for the issuance of certain surety bonds on behalf of Defendants.  More specifically, F&D and Colonial issued performance and payment bonds

---

[1]This Order does not address the liability of Defendant Valdemar Rios, Jr., who declared bankruptcy on February 16, 2007.  The Court expresses no opinion on the liability of Rios to Plaintiffs.  The Court previously granted a stay of all claims against Rios pursuant to the automatic stay provisions of 11 U.S.C. § 362. *See* Docket No. 19, Pg. 3.

("Bonds") naming T.G. Services as the principal and the United States of America as the obligee on the construction project referred to as Contract No. 29126G-04-C-003, Sanderson Border Patrol Station, Sanderson, Texas ("Project").

Plaintiffs allege that claims were made on the Bonds issued by F&D and Colonial. As a result of such claims and Defendants' alleged failure to satisfy their indemnity obligations, F&D and Colonial have allegedly suffered loss, costs, and expenses, including attorney's and consultant's fees, in the amount of $3,283,936.97. Plaintiffs allege that reserves over and above the loss to date have been set by F&D and Colonial in the amount of $54,826.78. The Agreement of Indemnity stated that Defendants would exonerate, indemnify, and keep indemnified F&D and Colonial from and against any and all liability for losses and/or expense of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) which F&D and Colonial have incurred or sustained as a result of having furnished the Bonds or in enforcing the provisions of the Agreement of Indemnity.

Plaintiffs filed a motion for partial summary judgment against all Defendants on January 31, 2007. The deadline for responding to the motion was extended to February 16, 2007. Defendants did not file a timely response to the motion. On February 21, 2007, Defendants filed an advisory to the Court, stating that Defendant Valdemar Rios, Jr. filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division on February 16, 2007. Defendant Tri-Lam is a Texas corporation with its principal place of business in San Antonio. Defendant T.G. Services is a joint venture between Tri-Lam and Vincent T. Garza Contracting Services, Inc. Rios is an officer, director and shareholder of Tri-Lam. Tri-Lam and T.G. Services are the non-bankrupt co-Defendants in this case.

On February 27, 2007, the Court ordered the parties to submit briefing concerning whether

this action should be stayed as to the non-bankrupt co-Defendants pending resolution of Defendant

Rios' bankruptcy case. The Court stated that it would postpone consideration of Plaintiff's motion

for partial summary judgment pending its ruling on this legal issue. The Court stated that if it

determined that the case should proceed against the non-bankrupt co-Defendants, then the Court

would set new deadlines for filing a response to Plaintiff's motion for partial summary judgment.

On March 22, 2007, the Court granted the non-bankrupt co-Defendants' request for a stay of

discovery pending a ruling on the applicability of the automatic stay to the non-bankrupt co-

Defendants.

On April 9, 2007, the Court vacated the discovery stay and held that the automatic stay

applicable to Rios should not apply to Tri-Lam and T.G. Services. *See* Docket No. 24. Tri-Lam and

T.G. Services were ordered to file a response to Plaintiffs' motion for partial summary judgment by

April 23, 2007**.** The Court stated that if Tri-Lam and T.G. Services did not file a timely response,

the Court would consider the motion unopposed. Tri-Lam and T.G. Services never filed a response.

## II. Legal Analysis

### A.    Summary judgment standard of review

Plaintiffs have moved for partial summary judgment. Rule 56(c) provides that summary

judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue of material

fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The

party seeking summary judgment bears the initial burden of informing the court of the basis for its

motion and identifying those portions of the pleadings, depositions, answers to interrogatories,

admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine

issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999); *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 321 (5th Cir.1998); *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir.1997), *cert. denied*, 523 U.S. 1073 (1998).

A material fact is one that might affect the outcome of the suit under governing law. *See Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir.1994). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**B.      Indemnity agreements under Texas law**

In exercising its diversity jurisdiction, this Court will apply the law of Texas in evaluating Plaintiff's claim for breach of the indemnity agreement. *Blase Industries Corp. v. Anorad Corp.*, 442 F.3d 235, 237 (5th Cir. 2006) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938)).

Texas courts construe indemnity agreements under the normal rules of contract construction. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex. 1998). If the contract is unambiguous, Texas courts will give legal effect to the contract as written. *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983). When a surety is granted the contractual right to settle a claim without a judicial determination of liability, that right will be enforced as written, and the principal will be bound to reimburse the surety for the amount it has paid in settlement. *Associated Indem. Corp.*, 964 S.W.2d at 282-85; *Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d 274, 282 (Tex. App.–Dallas 1992, writ denied). Common law principles such as reasonableness of the settlement and a requirement of potential liability do not apply where the indemnity contract expressly gives the surety the right to settle claims without an adjudication.

*Associated Indem. Corp.*, 964 S.W.2d at 285 (citing *Ford v. Aetna Ins. Co.*, 394 S.W.2d 693 (Tex. Civ. App.–Corpus Christi 1965, writ ref'd n.r.e)). Where the surety is given the unqualified right to settle claims, it is immaterial whether the surety and its principal are legally liable on the bond. *Gaubert*, 829 S.W.2d at 282; *Ford*, 394 S.W.2d at 698. Moreover, the surety does not owe a common-law duty of good faith and fair dealing to its principal. *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 420 (Tex. 1995). An unambiguous contractual right to indemnification on a settlement is absolute, unless the principal raises and proves an affirmative defense such as fraud. *Gaubert*, 829 S.W.2d at 282; *Ford*, 394 S.W.2d at 698.

In construing a contract, a court's primary duty is to give effect to the written expression of the parties' intent. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). To achieve this objective, the court should consider the entire instrument in an effort to harmonize and give effect to all its provisions so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

The question of whether a contract is ambiguous is one of law for the court. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). In determining whether a contract is ambiguous, Texas courts consider the contract as a whole, in light of the circumstances existing at the time it was executed and bearing in mind the particular business activity the contract sought to serve. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529-30 (Tex. 1987). A contract will be held to be ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one interpretation. *Heritage Resources*, 939 S.W.2d at 121. Not every difference in the interpretation of a contract amounts to an ambiguity—neither conflicting expectations nor disputation is sufficient to create an ambiguity. *Forbau*, 876 S.W.2d at 134. If a written instrument

is worded so that it can be given a definite legal meaning, it is not ambiguous, and the court must

construe the contract as a matter of law. *Coker*, 650 S.W.2d at 393.

The indemnity agreement executed by Defendants provides in relevant part as follows:

### INDEMNITY

SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep
indemnified the Surety from and against any and all liability for losses and/or
expenses of whatsoever kind or nature (including, but not limited to, interests, court
costs and counsel fees) and from and against any and all such losses and/or expenses
which the Surety may sustain and incur: (1) By reason of having executed or
procured the execution of the Bonds, (2) By reason of failure of the Contractor or
Indemnitors to perform or comply with the covenants and conditions of this
Agreement or (3) In enforcing any of the covenants and conditions of this
Agreement. Payment by reason of the aforesaid clauses shall be made to the Surety
by the Contractor and Indemnitors as soon as liability exists or is asserted against the
Surety, whether or not the Surety shall have made any payment therefor. Such
payment shall be equal to the amount of the reserve set by the Surety. In the event of
any payment by the Surety the Contractor and Indemnitors further agree that in any
accounting between the Surety and Contractor, or between the Surety and the
Indemnitors, or either or both of them, the Surety shall be entitled to charge for any
and all disbursements made by it in good faith in and about the matters herein
contemplated by this Agreement under the belief that it is or was liable for the sums
and amounts so disbursed, or that it was necessary or expedient to make such
disbursements, whether or not such liability, necessity or expediency existed; and that
the vouchers or other evidence of any such payments made by the Surety shall be
prima facie evidence of the fact and amount of the liability to the Surety.

The Court concludes that the indemnity agreement is unambiguous, and it will give legal

effect to the contract as written.   The indemnity agreement granted Plaintiffs the contractual right

to settle a claim on the Bonds without a judicial determination of liability.  Defendants did not

respond to the motion for partial summary judgment, and they did not raise and prove an affirmative

defense to payment such as fraud.  The contract clearly states that Plaintiffs are given the unqualified

right to settle claims made on the Bonds.

The indemnity agreement states that "the vouchers or other evidence of any such payments

made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety." The Court finds that Plaintiffs made a demand on the Defendants for the amounts owing under the indemnity agreement. *See* Motion for [Partial] Summary Judgment, Exhibit A-4. In his affidavit, Darrell Leonard, bond claims counsel for Plaintiffs, testified that claims were made on the Bonds. *See* Motion for [Partial] Summary Judgment, Exhibit A. As an attachment to his affidavit, Leonard included "computer records maintained by me on behalf of F&D and Colonial in the ordinary course of business, reflecting and evidencing all payments made by F&D and Colonial to date because of having furnished the Bonds, because of the Indemnitor's failure to discharge their obligations under the Agreement of Indemnity, and to enforce the provisions of the Agreement of Indemnity. The total amount of losses, costs, and expenses suffered by F&D and Colonial to date as a result of issuing the bond, including attorney's fees and consulting fees, totals $3,283,936.97." Leonard further stated that Plaintiffs "remain exposed to additional losses, costs, and expenses. F&D and Colonial have established reserves over and above the losses and expenses to date, in the amount of $54,826.78." The Court finds that the indemnity agreement required Defendants to make payment to Plaintiffs in "the amount of the reserve set by the Surety."

The Court has reviewed the computer records maintained by Plaintiffs and concluded that they accurately reflect the amounts paid by Plaintiffs to satisfy claims made on the Bonds. Common law principles such as reasonableness of the settlement and a requirement of potential liability do not apply where the indemnity contract expressly gives the surety the right to settle claims without an adjudication.

Plaintiffs pled for pre- and post-judgment interest in their First Amended Complaint. Post-judgment interest can be recovered on any state court money judgment in Texas. *See* TEX. FIN. CODE

-8-

§ 304.001.  As of May 2007, the judgment interest rate in Texas was 8.25%.[2]  *Id.* at § 304.003(c)(1).

The interest rate for pre-judgment interest is the same as that for post-judgment interest.  *Id.* at §

304.103; *Johnson & Higgins, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998).

Although section 304.103 sets the rate for pre-judgment interest in cases involving wrongful death,

personal injury, and property damage, the Texas Supreme Court adopted the same rates for pre-

judgment interest in all cases.  *Johnson & Higgins*, 962 S.W.2d at 530-31.  Pre-judgment interest

will accrue in accordance with Tex. Fin. Code § 304.104.  *Apache Corp. v. Dynegy Midstream

Services, Ltd.*, 214 S.W.3d 554, 566 (Tex. App.–Houston [14th Dist.] Dec. 7, 2006, no pet. h.).

Consequently, pre- and post-judgment interest will accrue on Plaintiff's breach of contract claim at

the rate of 8.25%.

### III. Conclusion

Plaintiffs' motion for partial summary judgment is GRANTED (Docket No. 14).  The Court

finds that Tri-Lam and T.G. Services breached the general agreement of indemnity.

The motion for partial summary judgment only addressed Plaintiffs' breach of contract claim.

Consequently, Plaintiffs' reasonable access to books and records, fraudulent transfer, breach of

fiduciary duty, fraud, Texas Construction Trust Fund Statute, and conversion claims remaining

pending before the Court.  After all claims against Tri-Lam and T.G. Services have been resolved,

the Court will enter Final Judgment on a separate document pursuant to Rule 58 of the Federal Rules

of Civil Procedure.  The Clerk is instructed to keep this case open pending resolution of these

remaining claims.

---

[2]*See* http://www.occc.state.tx.us/pages/int_rates/Index.html

It is so ORDERED.

SIGNED this 15th day of May, 2007.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE